Good morning, your honors. Mark Passon for Robbins Kaplan on behalf of plaintiff and appellant at the Ray Charles Foundation. I'd like to reserve five minutes of time for rebuttal. This appeal involves an issue of first impression. Whether a beneficial owner of a copyright has standing pursuant to sections 203 and 304 of the 1976 Copyright Act to challenge a notice of transfer, a notice of termination of transfer. The district court dismissed Ray Charles' claims for declaratory relief on the grounds that there was no prudential standing. In the time I have today, I would like to address the district court's finding that the foundation had no prudential standing based on the foundation's claim falling, according to the district court, outside the zone of interest to be protected by sections 203 and 304. As you do that, can we focus on, because I must admit, having been a state judge, copyright law is relatively new to me. Your contention, I take it in this case, is that these are works for hire, and therefore the termination was ineffective? No, your honor. And all of that, of course, would go to the merits, as opposed to standing. Correct. But I'm trying to figure out what your, let's assume for a second you have standing, because standing relates to the claims that you're making. What's the claim that you're making? Correct. Your honor, we have several arguments that we would make once we had standing. First, we would argue possibly that, or we would argue that it's a work for hire, and therefore. Not terminable. Not terminable. We would also argue that Ray Charles renegotiated the contract in 1980 with the transferee, Warner Chapel, and as a result of that renegotiation, gave up any termination rights. But at the end of the day, your argument is simply that the termination was ineffective as a matter of law. Ineffective, or even if it were effective, what the defendants did is they sent out numerous or multiple notices of transfers for the same copyrights, which all have different termination dates. Okay, but. Different five-year windows, and just to finish this to make sure we're clear. I'm understanding from your complaint that part of the relief you're seeking is a declaration about exactly that, these staggered windows where termination could be effective. Is that correct? Without that declaration, the Ray Charles Foundation is sitting there and doesn't know when, in fact, it's going to lose its rights. But no matter how you denominate the claims, at the end of the day, what you're seeking to do is get a declaration as to the effectiveness of various, make a termination as opposed to a single termination, correct? Correct. And so the question is, if Warner, to use a shorthand, doesn't care, and they are the owner of the copyright, why should you be allowed to challenge that termination? What is it about your clients that gives them the standing to challenge something that the two parties to the contract, if you will, are not fighting about? Well. You're in effect in the position of an assignee. I know it's not a common law case, but it's as if two people have contract rights and one of them has assigned some of his rights to you, and the parties to the contract decide to terminate it. What's your standing under those circumstances? Well, first of all, the Ray Charles Foundation is a party to the contract with Warner Chapel. In fact, defendants are not a party to that contract. And pursuant to that contract, Warner Chapel is entitled to exploit the copyrights and in return pay royalties to the Ray Charles Foundation. I understand your financial interest. I guess the district judge in this case said, I don't think anybody but the party whose copyright is being terminated, which is Warner, has the standing to complain about it. And as you say, it's a case of first impression. So tell us why your client should have the standing to complain about it. My analogies may not work, but I'm still. First of all, and I'd like to get back to what the district court said, because that's not, in my opinion, exactly what they said. They said you have Article III standing, but not prudential standing, because the statute doesn't seem to talk about you. That's what the district court said. They said that the heirs have standing, and they also said the grantee who is receiving the notice of transfer also has standing. Right. And I want to address that, because that is not within the zone of interest. But let me answer your question, Your Honor. Please. If you look at the statute, and the district court did this, it said on the face of the statute, it's clear that only the statutory authors, and again, they said the grantees, have standing to object to the terminations. And they did that because they looked at the language of the statute, and it didn't mention beneficial owner anywhere. However, it expressly mentions the author, and clearly Ray Charles was the author, and the foundation is the successor in interest to the author. Can termination rights of the author be transferred to the foundation? That would be another issue of first impression. But yes, the answer is yes, it can be, and it brings me to my next point. Yes, it can be, and what the statute says very clearly is if you make a grant by will, that grant cannot be terminated by sections 203 and 304. So, again, if you look at the face of the statute, it mentions the author, which is the foundation, and it mentions grants by will. Well, the foundation received all of the interest it received in the copyrights by a grant by will. Therefore, if you look at the face of the statute, the foundation clearly has standing. But let me go back to your... Charles in this case, the initial author, can transfer those authorship rights, if you will, to somebody else, right? That's why I asked if the rights could be transferred. Well, clearly the foundation is the successor in interest to the author, and yes, you can transfer your termination rights pursuant to the statute, because it clearly says if you do, it's not subject to termination. All right. Now, you brought up an interesting point, which really... Well, first of all, you brought up an interesting point. You said that the district court found that the statute was designed to protect the statutory heirs. However, the district court went through an extensive zone of interest analysis to determine that the foundation was not within the zone of interest. But that analysis was fatally flawed, and let me explain to you why. The district court looked at the statute and said the statute is designed to protect two class of challenging individuals or corporations. It said it allows and protects the statutory heirs who are seeking the right to recapture their copyrights, and it also said, to a lesser extent, it's protecting the grantee so that it can reserve or recapture the transfer. So, in other words, to protect the rights that it acquired by the transfer. The court relies on two cases for that proposition. One, it relies on the Larry, I forget, Spear case, and the Ahert Music case. Now, in the Spears case, it's clear if you read it, the only interest the court in that case said the statute was designed to protect was the interest of the statutory heirs to recapture the copyright. If you look at the Ahert Music case, the only interest the court says the statute is designed to protect is the statutory heirs' right to recapture the copyright. Well, if that's true, then why are we here? Because Warner Chapel wouldn't have standing to assert or challenge the notices of termination, and, in fact, no one would have standing to assert or challenge those notices. Well, but why isn't that, I guess, the question that you pose, having read the Second Circuit case, is why isn't that what the statute's about? The statute says heirs can terminate, and Warner Chapel can argue that you're not the heirs, but other than that, there's an absolute right to terminate. The only question is whether you're heirs. Warner Chapel can contest that, but it can't contest their decision to terminate. Why isn't that a reasonable reading of the statute? Well, what I'm saying is, according to the zone of interest analysis applied by the district court, even Warner Chapel couldn't challenge. Well, even if these were works for hire? According to the district court's zone of interest analysis, if you apply that, no, no one would have the right to challenge. Now, you bring up an interesting question. I keep doing that. Give me an interesting answer. I'm just so impressed with your questions, and I apologize if my answer is a bit mundane. That's okay. The district court assumed that if the works were works for hire, that the foundation had no standing because it couldn't be a beneficial owner. Now, I think today all I have to prove to this court is that a beneficial owner has standing, but I think we could go farther. I think the district court was wrong. I think clearly, even if these were works for hire, that the Ray Charles Foundation has standing. Well, do you need to establish that? Yes, because if you have standing for work for hire, you clearly have standing as a beneficial owner, and here's why. Again, think about the situation. The defendants argue that these are works for hire. The statute clearly states, if they're works for hire, that the defendants have no right to terminate, and that's their position. Their position in their papers is this is a work for hire, and therefore, we have no right to terminate. Counsel, this all goes to merits. Yeah. This case is about standing. Right, but let's say it is a work for hire. The court's saying I, meaning the foundation, doesn't have standing to challenge that. I understand what the court is saying. Yeah, but I know you want to save some time for rebuttal. Then I'd be deprived of all my rights without any right to challenge it, even though it's clear that defendants have no right, and they're invalid. Do you have a complaint against Warner? No, we don't. Why not? I mean, if you have a, if you're the beneficiary of copyright rights that they have and they have failed to object to their illegal termination, why can't you sue them? We may or may not be able to sue them, but again, this case isn't over. No, but the standing issue may be over that. In other words, what the judge may be saying is you're, what you should do is make a claim against Warner for not objecting. They could have objected. They should have objected. They're in cahoots with the bad guys in this case. Why don't you sue them? Well, we may, and we may have the right to do so, but I don't think that time would be right until now. Plus, I don't think we have to sue them because I think the statute gives us standing, and I also think the damages are irreparable. Counsel, would you like to reserve some time for rebuttal? Yes. Thank you. You're welcome. Good morning, Your Honors. Mark Toberoff for the defendants, the children of Ray Charles. May it please the court. Unfortunately, this case is not really a case of first impression. I love cases of first impression. This is a fairly standard case in which the plaintiff lacks standing under well-settled prudential standing requirements and bases its standing solely on alleged injury in the form of diminished domestic royalties. Why don't they at least have standing to come forward and seek a declaration about the appropriate sequence of these windows during which the termination right can be executed? Because, first of all, we have to start with their complaint. And their complaint, the entire narrative of the complaint is that Warner Chapel continues to own the copyright in the form of publishing rights to these Ray Charles compositions. They're asserting a third party's ownership rights. They're not asserting any right of theirs under the statute. So you immediately go to the prudential third party's standing requirements. Counsel, I think you're missing my question. I'm sorry. My question is, a minute ago when he was ticking off what he sought, he said even if they can terminate, even if it's not an invalid termination, we're entitled to judgment today. We're entitled to standing, excuse me, for purposes of getting a declaration from the court about the appropriate windows, the five-year windows during which the termination right may be executed. The windows where the termination rights can be executed is a very easy to analyze. Why aren't they entitled to that from the court? They may lose. We're just talking about standing. Because they don't have statutory standing. That's not an answer. That's a restatement. Why don't they have statutory standing? Why don't they have prudential standing? Because there's nothing in the statute that gives them, there's nothing in the, the cases say that when you look at prudential standing, you look at the particular provision. You look at the particular provisions that they're seeking to enforce. Those provisions are utterly silent when it comes to somebody with a royalty. That's our problem. They are utterly silent. Okay. We all agree with you. So the question is why do they exclude these people? Silence is not ambiguity because Congress is presumed to know the law, and if they want to grant standing, they know how to do it. Congress rarely grants standing. Hardly ever does Congress say we're granting standing. Congress creates rights and liabilities out of which the courts then determine whether they're standing. Now, with particular prudential standing, why isn't it prudentially sound to say the statutory scheme was designed to protect the rights of everyone who had rights under copyrights? Well, they don't. Whether they're called owners or grantees or. Because that's the key issue. Beneficial owners. It's designed to protect, to adjudicate or regularize the interest of all those who claim under copyright. I agree, Your Honor, but that's the key issue, whether they have rights under the Copyright Act and they don't have rights under the Copyright Act under these provisions. But that's a conclusion. Again, that's a conclusion. Just keep restating the conclusion. My question is if nothing else, even if they come in and say the children have the right to terminate, we give up. Why aren't they entitled to a judicial declaration about the appropriate windows during which those rights may be executed? It's a simple question. Because they don't have standing to sue under the Copyright Act, and I will explain why. Section 2, you have to look for prudential standing, if I may, at the sections they're seeking to talk about with those windows. Why do you have to look at the sections as opposed to the statutory scheme? You could look at the statutory scheme. There's nothing in it. The only thing in the statutory scheme that speaks about a beneficial owner, which they rely upon, is 501B. 501B is specifically limited to copyright infringement cases. Again, Congress took the time to have a standing provision but limited it to copyright infringement cases. Your argument would make sense to me if somebody off the street came in and said, we don't think that the children should be able to terminate because we think it was great that their dad wanted these royalties to go to a charitable foundation. That would make a lot of sense to me, or at least it would make more sense to me. But what we have here is a foundation that was in the decedent's will. It was the beneficiary of his will, and it's not a future interest. This is a current royalty stream that they're receiving. Why aren't they entitled to at least get a declaration about when the children can terminate? Isn't that part of the statutory scheme? They're surely injured in a regular sense. I believe the cases specifically say injury is not enough. What they're essentially saying is we've been injured, therefore, and since we satisfy Article 3, we have standing. They're not just saying that. They're saying that we've got Article 3 standing and that we've got prudential standing because if nothing else, there's a statutory scheme that's being employed here to take away our royalty stream, and we want to at least know from the court that these windows, I keep calling them, for the 51 works at issue. Why don't they have standing for that? Because that statutory scheme is not a statutory scheme to take away their royalties. That's injury. That doesn't translate. Statutory scheme that permits termination, right? The termination is not terminating them. The termination terminates an old grant made by the father of my clients to third-party music publishers. Right, who has no reason to worry about this at all because that music publisher is going to write a royalty check to somebody. That's not true. When they get back the copyrights, they can make an arrangement with another music publisher. It could happen. And this solely deals with domestic royalties. The foundation will continue to receive money domestically prior to the date of the termination. So what if they're losing some money? Why does it matter if they're getting some other money? What does that have to do with it? Losing the money doesn't matter either because injury does not translate to a statutory right. It may or may not. If the statute is creating protection for everyone who has interest in copyrights, then indeed that places them within the zone of interest which the statute is intending to protect. I respectfully would disagree, Your Honor. They have a financial interest based on a contract that's a contractual interest, not a statutory interest. A right to receive royalties extends as a contractual right. There are also rights under various customs and practices in the music industry where you get a mandatory royalty, but it's not from the Copyright Act and that's what they're suing under, declaratory relief under the Copyright Act. There's no better demonstration of the fact that Congress did not contemplate protecting people with royalty interests in the termination provisions than by the fact that you're not even required to give third-party profit participants or people with royalty interests or some other contractual interest notice of the termination. The termination provisions and the regulations... And from that you decide that they don't have standing? I believe that, no, from that you say did Congress contemplate giving, protecting an interest of third-party, of royalty participants if it doesn't even require that you give them notice? We're not talking about protecting, whether Congress contemplated protecting them. That's not the question. But that's the standard for the zone of interest analysis, respectfully. I think we have a serious difference of opinion about the zone of interest analysis. Let me tell you what troubles me about the logic of your position, and so tell me where I'm wrong. Let's assume a case very different than this one because we don't have any facts that support this, but the children go to Warner and says, how much are you paying these guys in royalties? And they say, you can pay us half. So we'll terminate. You shouldn't complain even though you could have because these are all works for hire and we're not in the window or whatever. But let's make a deal. Let's cut out the foundation, Warner, and you can pay us half what you're paying the foundation. I take it the logic of your argument is that the foundation couldn't complain about that, right? I'm sorry, Your Honor, I didn't... The foundation, Warner and your clients are in cahoots. And Warner says, you know, I could fight this because I think these are works for hire, but I don't like the amount of royalties I'm paying to the foundation. So let's make a deal. You'll take less children and you exercise your termination rights. And even though I could have complained, I won't. That's not what happened here, I don't think, but I'm posing that hypothetical to you. The question is, could the foundation complain under those circumstances? It may have a claim against Warner. But it couldn't complain about the termination under the Copyright Act, even though it was a conspiracy to deprive them of their rights. I don't believe so, Your Honor. You have to say that, don't you? No, I don't believe so, because the Copyright Act doesn't protect people with royalty interests. That's a matter of contract law, having a royalty interest. And injury alone... What creates royalty interests? Excuse me? What creates royalty interests? A contract in which you say the artist... Your Honor, the royalty interests are passed, but somewhere the royalty interests arise. A contract can't create royalty rights, can it? Yes. It could say, we're going to give you ex-profit participation every time we sell a book or every time we sell a song. It's a contractual right, a royalty right. You're selling a royalty right to the other party to the country. You have that royalty right for some reason. It arises under law. As a matter of contract. It exists. Before there is even a contract, somebody has the right to contract about those royalties. You don't have two people on the street who come together and say, I'm going to pay you royalties if I sell one of John Smith's books. Right? John Smith has the royalty rights, or Ray Charles, in this case, has the royalty rights. Because of what? The law gives him royalty rights, right? The law doesn't give him royalty rights. The law gives him a copyright interest. Yeah, right. Copyright interest. I'm sorry I misused the terminology. It's between copyright interest and royalties. Nonetheless, the rights we are debating here come from statutory law, don't they? No. I don't believe they do, Your Honor. Respectfully. Well, what was it we extended was trademark rather than copyright, I guess, that we extended for 100 years or so a while back. In any event, you're not dealing with common law copyrights here, are you? No, you're dealing with copyrights that were originally owned by Ray Charles. We're not dealing with Ray Charles having common law copyrights, are we? No, we're not. Right. They come from what body of law? Whence came his copyright rights? They come from the copyright statute. Copyright statute. That's not being contested. Right. They came under statutory rights. There are other parts of statutory schemes that affect how those rights may be terminated, right? That doesn't terminate the rights. The royalty rights under those rights. No, it doesn't. I don't want to quibble with you over the point. Just forget it. I'm trying to answer the question. No, you're not. You're not trying to answer the question. The rights came from statute. The rights that we started with, the copyrights, out of which the royalty rights can arise, come from statute, right? Yes. So we look to statutes to protect everybody who has interest in those rights created by statutes, right? I would disagree with that, Your Honor, respectfully, because the interest, you can have a copyright. You can transfer that in a contract with a third-party music publisher. Or you can transfer it just the royalty rights. And exchange, receive a profit participation or a royalty. The copyright that you are transferring is a right under statute. The royalty is a contractual right. And just so it's clear, what the termination provisions do is they specifically give spouses, children, and grandchildren an inalienable right to, after decades, recover their parents' or spouses' copyrights by simply serving notices of termination on the grantees. Counsel, we understand that. But you seem to want to have it both ways. And the termination right is created by a statutory scheme. And it is common for us to encounter statutory schemes that don't include an express standing provision, as Judge Sentell has said. And that is, it seems to me, in one form or another, you keep coming back to that. It's because Congress didn't say so in this statute. Congress usually doesn't say so in this statute. Okay. So what's your strongest argument that they lack prudential standing? The strongest argument that they lack prudential standing is, number one, they're not asserting any right of theirs under the Copyright Act. They're not trying to litigate whether they have a royalty interest under the Copyright Act, because they don't. They're asserting the rights of Warner Chapel to continued ownership. And they will have to follow the prudential standing requirements that apply third-party standing. So that is my question. Counsel, you're not answering the question. What's your strongest authority? You keep ceding the conclusion, and I appreciate that. I'll give you another minute to answer the question. But what's your strongest authority? My strongest authority are the cases. Which ones? Do you want me to incite the cases? You said this wasn't a case of first impression. I must admit that I can't find a case in which a court dealt with somebody in the situation of Ray Charles Foundation seeking standing, and the court dealt with that issue. So tell me what your strongest case is. Two Ninth Circuit cases regarding third-party standing, the State of McKinney and Hong Kong v. Kaiser. Third-party standing. Both those cases say a plaintiff must assert its own rights, and those rights must be within the zone of interest of the particular statutory provision. If you look at the complaint, which governs their own complaint, they don't assert their own rights. They assert the rights of Warner Chapel, and they fail to meet well-settled third-party standing requirements. Is it fair to say this is a case of first impression under the Copyright Act? Is there any case involving the Copyright Act that deals with this set of facts? That deals with these termination provisions. These termination provisions. That is fair to say, yes. Okay. But you're extrapolating from general principles, and I'm trying to find out if you can give us a case that we can look at. No, we haven't found one, and you started by saying this is not a case of first impression. What I mean by that is that if you follow well-settled prudential standing requirements, if you just go and say, okay, Article III, okay, arguably. That's what they are. Right. And so your strongest authority, you think, is McKinney? And if you do that, then they don't have standing. And your strongest authority is? No, I'm going to finish answering the question. Counsel, you're out of time, so you can either answer my question or please be finished. The next authority are all the cases that deal with zone of interest. It's Bennett v. Speer and Clark, two Supreme Court cases, and Powers v. Ohio. Thank you. Which is another Supreme Court third-party standing case. Thank you, Counsel. You're out of time. Counsel, would you like to rebuttal? Yes, please. Yes, please, Your Honor. First, if I talk here, does my time start to run? Just come to the microphone. It's not a trick. And we'll begin. The first issue I want to address is, throughout their brief and in today's argument, opposing counsel relies on third-party standing cases. Those are not applicable. The Foundation is alleging its own right, not the right of Warner-Chapman. He says you're not. He says you're not. My response is, look at the complaint. Ray Charles alleges it's the author. He is the author of the composition. Well, the Foundation alleges Ray Charles was the author. Two, the Foundation is the successor in interest to Mr. Charles. Three, we allege that during his lifetime, Mr. Charles transferred the copyrights to Progressive, which is a successor in interest to Warner-Chapman, in exchange to receive royalties generated from the exportation of this composition. Okay, but their argument, just focus in on their argument. Their argument is that your client has a right that exists either by contract or by bequest or by whatever, but not a right that exists by virtue of the Copyright Act, and that standing ought to only be given to those people whose rights arise directly from the Copyright Act. A variant of the question Judge Gentile was asking. So tell me why your client's rights arise under the Copyright Act. Absolutely. And I was just going to get there. My next point is the legislative history of the 1976 Act expressly states a beneficial owner for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalty. The history of 501B? No, that's separate, and that goes to 501B, and I was just going to get there as well. 501B, which is the sole standing statute under the Copyright Act, expressly confers jurisdiction on beneficial owners, and I just defined beneficial owners by the legislative history. Does it confer jurisdiction on beneficial owners to contest terminations? That's the question. Is that just infringement? Excuse me? Is that just infringement for which that conferred? I would contend it's the only standing statute. And it's not. It wouldn't have standing to do something if it will not have standing to do something else. So that statute applies to infringement actions, doesn't it? Except it doesn't state. Counsel, that's a yes or a no question. And isn't the answer yes? Finally, I would argue no, but if you tell me it's clear that it's yes. Well, if you want to argue no, you can argue no, but you can always say yes or no. You can't tell us that the question is not good. The other side's argument is that it created an exception, and by the act's silence, it created a prohibition to standing in the other statutes. So I think your argument may be slightly different. Your argument is that because the history of 501B recognizes that beneficial owners have some interest in copyrights, that we ought to recognize them as having an interest in the termination of those copyrights. I agree. But you can't tell me that 501B gives you standing. I'll adopt that. If that's your argument, you lose. I'll adopt that. But let me. Because I didn't think you wanted to say that. So you're way over time. I just want to know one final. The final point? No. The final question I have for you, sir, is what's your best prudential standing case? My best prudential standing case? Yes. What's your authority? I'm thinking as I sit here. You stand. Off the top of my head, there was no one in particular. I don't think any of them held against me on prudential standing. As I sit here, I don't know which was the best case. All right. We'll submit the case. We'll stand in recess. We thank both counsels for your help with these really important and interesting cases, and we'll be off record.
judges: Sentelle, Christen, Hurwitz